Derek **MURPHY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–01–00226–CR.

Court of Appeals of Texas, San Antonio.

Nov. 27, 2002.

Suzanne M. Kramer, San Antonio, for appellant.

Michael P. Miklas, III, Assistant Criminal District Attorney, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice.

Opinion by: CATHERINE STONE, Justice.

Appellant Derek Murphy challenges the trial court's denial of his motion to suppress. We affirm the trial court's ruling.

### BACKGROUND

Murphy and a companion were the primary suspects in a San Antonio Police Department triple homicide investigation. During the course of the SAPD's investigation, Detective Robert Moffitt contacted Murphy for an interview. Murphy agreed to meet Moffitt at the police station for questioning. Unbeknownst to Murphy, however, Moffitt planned to arrest Murphy on a municipal court warrant for unpaid traffic fines. When Murphy arrived at the police station, Moffitt informed Murphy he was a suspect in an unsolved triple homicide and advised him of his rights. Moffitt did not inform Murphy of his plans to arrest him under the municipal court warrant. Murphy told Moffitt he understood his rights [1] and would waive them to speak with the detective. During the subsequent interrogation, Murphy denied any involvement in the homicides.

After determining the homicide interview was going nowhere, Moffitt decided to arrest Murphy under the municipal court warrant.[2] Moffitt, however, never informed Murphy that unpaid traffic fines served as the basis for the arrest. In fact, when Murphy asked what he was being arrested for, Moffitt replied, "[you are] in homicide ... what [do you] think [you are] under arrest for?" Moffitt further indicated he was filing charges against Murphy for murder and credit card abuse in relation to the triple homicide.[3] Following Murphy's arrest, Moffitt left Murphy alone for approximately five minutes. Upon his return, Moffitt found Murphy crying. Murphy told Moffitt "he hadn't told ... the truth, but that he was now going to tell ... the truth." Moffitt once again advised Murphy of his rights, and Murphy once again agreed to waive his rights.

During the six-hour interrogation, Murphy talked freely with Moffitt, did not indicate a desire to terminate questioning, and never requested an attorney. Murphy eventually confessed to participating in the triple homicide. Moffitt then prepared a written statement summarizing the interview. Murphy read and signed the statement. Immediately after signing the statement, however, Murphy decided to add something to his statement. On separate paper, Murphy drafted an addendum to his statement alleging Clifford Kimmel, not Murphy, was the one ultimately responsible for the triple homicide.

Murphy was charged with three counts of capital murder. Murphy moved to suppress the typewritten statement and its addendum on the grounds they were taken

---

1. After Moffitt read Murphy his rights, Murphy signed a copy of the rights acknowledging he understood them.

2. Moffitt testified he arrested Murphy on the outstanding warrant to get information regarding the murder investigation.

3. Moffitt testified he had some evidence to charge Murphy with murder and credit card abuse, but not enough to arrest Murphy for those offenses.

in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Section 9, Section 10, and Section 19 of the Texas Constitution, and Articles 38.22 and 38.23 of the Texas Code of Criminal Procedure.[4]

The trial court held a suppression hearing and entered the following findings of fact and conclusions of law:

I find Mr. Murphy was legally placed under arrest by Detective Moffitt. That thereafter, he was warned by Detective Moffitt of his rights, that he affirmatively indicated that he understood his rights. He proceeded to have a conversation with Detective Moffitt, which Detective Moffitt then sought to reduce to writing in State's Exhibit No. 99, which bears all of the requisite warnings required by 38.22 of the Code of Criminal Procedure. That Mr. Murphy understood both his rights and the consequences of waiving them as evidenced by the testimony of Detective Moffitt, also the testimony of Mr. Murphy himself who indicated he did understand his rights. I am going to find that this was a voluntary statement, State's Exhibit No. 99, and is therefore admissible in evidence against Murphy. As far as his request for counsel goes, it is strictly Detective Moffitt's word against Mr. Murphy's word. And given the circumstances, the Court believes the testimony of Detective Moffitt as opposed to Mr. Murphy. So, I resolve that issue against him.... State's Exhibit No. 99 is admissible and [State's Exhibit No. 98] being a continuation of the State's Exhibit No. 99, is admissible as well.

Accordingly, the trial court admitted Murphy's statements, and a jury convicted Murphy on two counts of capital murder and one count of aggravated robbery.

Murphy was sentenced to life in prison for each of the capital murder convictions and 99 years imprisonment for the robbery conviction.

## STANDARD OF REVIEW

At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App. 1999). We afford almost total deference to a trial court's findings of historical fact, especially when the court's findings are based on an evaluation of credibility and demeanor of witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We show the same amount of deference to the trial court's rulings on "mixed questions of law and fact" if the resolution of such questions also turns upon an evaluation of credibility and demeanor. *Id.* However, we review *de novo* "mixed questions of law and fact" not falling within this category. *Id.*

## DISCUSSION

Murphy contends the trial court erred by denying his motion to suppress the statement he made following his arrest, claiming his statement: (1) does not meet the requirements of Article 38.22 of the Texas Code of Criminal Procedure; (2) was not voluntarily, knowingly, or intelligently made; and (3) was made after he had invoked his right to counsel.

## A. Article 38.22

██ Murphy argues his statement was inadmissible because it does not meet the requirements of Article 38.22 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 2 (Vernon 1979). Article 38.22 section 2

4. Murphy also sought to suppress physical evidence confiscated by police. On appeal, however, Murphy does not challenge the trial court's ruling as to this evidence.

provides a defendant's written statement taken during custodial interrogation is inadmissible unless it is shown that the defendant, before making his statement either: (1) received from a *magistrate* the warning provided in Article 15.17 of the Texas Code of Criminal Procedure;[5] or (2) received from the person to whom the statement is made the warning enumerated in Article 38.22, section 2, subsection (a)(1)–(5).[6] Murphy argues his statement is inadmissible because it does not reflect he received the warning provided in Article 15.17 of the Texas Code of Criminal Procedure. From Article 38.22's plain language it is apparent that a defendant needs to be warned pursuant to Article 15.17 only if he receives his warnings from a magistrate. *See* Tex.Code Crim. Proc. Ann. art. 38.22 § 2(a). Here, Mur-

phy received his warnings from a police officer, and as such, Murphy need only have received the warnings as enumerated in Article 38.22, section 2, subsection (a)(1)–(5). *Id.* Because Murphy's statement indicates he received the warnings as enumerated in section 2, subsection (a)(1)–(5) before making his statement, we hold Murphy's argument lacks merit.[7]

### B. Fifth & Sixth Amendments

Murphy also contends the trial court erred by denying his motion to suppress because his statement was not made voluntarily, knowingly, or intelligently. Although Murphy's argument invokes both state and federal constitutional protections,[8] he has not provided argument or authority that the Texas Constitution is more comprehensive than its federal coun-

---

5. Article 15.17, in relevant part, provides:

   The magistrate shall inform in clear language the person arrested, either in person or by closed circuit television, of the accusation against him and any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, and of his right to have an examining trial. The magistrate shall also inform the person arrested of the person's right to request the appointment of counsel if the person cannot afford counsel. The magistrate shall inform the person arrested of the procedures for requesting appointment of counsel.

   Tex.Code Crim. Proc. Ann. art. 15.17(a) (Vernon Supp.2002).

6. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 2 (emphasis added). When the warnings are given by a police officer, the police officer must warn the individual that:

   (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

   (2) any statement he makes may be used as evidence against him in court;

   (3) he has the right to have a lawyer present to advise him prior to and during any questioning;

   (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

   (5) he has the right to terminate the interview at any time.

7. Murphy argues his handwritten addendum is inadmissible because it contains no statement indicating he "knowingly, intelligently, and voluntarily waived his rights." *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2(b). We believe this argument lacks merit. The record indicates after *Moffitt* presented the typewritten statement to Murphy, Moffitt asked Murphy whether he would like to add anything to his statement. Murphy answered in the affirmative. Thus, because the addendum was not a separate statement by Murphy, but rather, a continuation of the statement he had just signed for authorities, there was no need for the addendum to also include a waiver statement.

8. Murphy complains his rights were violated under the Fifth and Sixth Amendments of the United States Constitution, as well as his rights under Article I, section 9 and section 10 of the Texas Constitution.

terpart. Therefore, we will not address his state constitutional claims. *See Muniz v. State*, 851 S.W.2d 238, 251–52 (Tex. Crim.App.1993).

■ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that a suspect's waiver of the Fifth Amendment privilege against self-incrimination is valid only if it is made voluntarily, knowingly, and intelligently. *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. An inquiry into a suspect's waiver of his rights "has two distinct dimensions." *Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). First, the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* Second, the waiver must be made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* Thus, Murphy's rights will be deemed waived only if the totality of the circumstances reveal both an uncoerced choice and the requisite level of comprehension on the part of Murphy. *See id.*

## I. Voluntary Nature

■ Murphy contends his waiver was the product of police coercion. Specifically, Murphy argues his waiver was compelled because he waived his rights only after authorities misled him to believe they had sufficient grounds to arrest him for murder. Murphy's allegation, however, does not relate to any of the traditional indicia of coercion: "the duration and conditions of detention . . ., the manifest attitude of the police toward [the suspect], [the suspect's] physical and mental state, the diverse pressures which sap or sustain [the suspect's] powers of resistance and self control." *Id.* at 574, 107 S.Ct. 851. Because there is no evidence indicating Murphy's will was overborne or his capaci-

ty for self-determination was significantly impaired because of coercive police conduct, Murphy's waiver was voluntary. *See id.*

## II. Knowing & Intelligent Nature

■ Murphy argues he did not knowingly and intelligently waive his rights because he was unaware of the actual charges against him. However, it is not critical that a suspect know the charges to which he is susceptible. A valid waiver does not require authorities to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Id.* at 577, 107 S.Ct. 851 (citing *Moran v. Burbine*, 475 U.S. 412, 422, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). So long as the suspect understands the basic principles that he has the right to remain silent and whatever he says can be used as evidence against him, his waiver is constitutionally adequate. *Id.* at 574, 107 S.Ct. 851.

■ Here, the record indicates Murphy was familiar with his *Miranda* rights. Not only did Murphy have a prior criminal history and thus prior experience in a similar setting, authorities read Murphy his rights twice before taking his statement. Murphy was read his rights when he first arrived at the police station and again immediately before making his statement. When he was read his rights, Murphy was explicitly told that anything he said could and would be used against him as evidence in a court of law. Murphy acknowledged he understood his rights. There is no evidence that Murphy exhibited any behavior which might suggest he did not understand his rights. Thus, Murphy's waiver was made knowingly and intelligently. *See id.* at 574–75, 107 S.Ct. 851.

## C. Right to Counsel

■ Lastly, Murphy argues the trial court erred by denying his motion to sup-

press because authorities violated his Fifth and Sixth Amendment right to counsel by questioning him after he requested an attorney.[9] Murphy alleges he invoked his right to counsel when he was placed under arrest. Moffitt, however, contends Murphy never requested an attorney at any time. Because the resolution of this factual dispute depends upon the credibility of the witnesses, we must defer to the trial court's finding that Murphy never invoked his right to counsel. *See Ballard,* 987 S.W.2d at 891. Accordingly, we hold Murphy's argument lacks merit.

### CONCLUSION

Based on the foregoing, we hold the trial court properly denied Murphy's motion to suppress.

**9.** Although Murphy cites the Sixth Amendment, his right to counsel under the Sixth Amendment does not attach until a prosecution is commenced, that is, at or after the initial adversary judicial criminal proceeding. *See McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Thus, Murphy's right to counsel in this case does not derive from the Sixth Amendment since no adversarial proceeding had commenced when he was questioned. *See id.*