# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00584-CR

**Stewart Lindsay Sherrod, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2010-105, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Stewart Lindsay Sherrod was charged by indictment with four counts of forgery and one count of engaging in organized criminal activity. *See* Tex. Penal Code §§ 32.21, 71.02. Appellant pleaded guilty to two counts of forgery, and the jury convicted him of those counts pursuant to his pleas. He pleaded not guilty to engaging in organized criminal activity and the remaining two counts of forgery, and the jury found him guilty of engaging in organized criminal activity, guilty of one of the two counts of forgery, and not guilty of the remaining count of forgery. Appellant pleaded "true" to enhancement paragraphs alleging five prior convictions, and the trial court assessed punishment at fifteen years' imprisonment for each forgery conviction and thirty-five years' imprisonment for the conviction for engaging in organized criminal activity, with the sentences to run concurrently. *See id.* §§ 12.34, 12.35, 12.42, 12.425.

The charges in this case were based on two forged checks that were passed to a bank in Bulverde, one on September 28, 2009, and one on October 8, 2009.[1] The evidence at trial shows that both checks were made payable to "Patrick Manning," whose wallet had been stolen when he was robbed at a bar in Blanco earlier that September. The State alleged that appellant, who knew Patrick Manning and was at the bar on the night Manning was robbed, collaborated with Steven Hargrove, a friend of his, and Hargrove's girlfriend, Misti McMain, to forge the checks. McMain worked as a teller at the bank and pleaded guilty to engaging in organized crime, admitting that she participated with appellant and Hargrove in a scheme to commit forgery. She testified at trial that she gave appellant and Hargrove an account number from the bank. Appellant admitted during an interrogation that he was at the bank on September 28 when the first check was passed but denied that he passed it (alleging that Hargrove did so) and denying that he knew it was forged at the time that it was passed. He pleaded guilty to passing the forged check on October 8.

In two issues on appeal, appellant challenges the sufficiency of the evidence to support his convictions for engaging in organized criminal activity and committing the September 28, 2009, forgery. In a third issue, he contends that the trial court erred in admitting a portion of his videotaped interrogation. We will affirm the trial court's judgments of conviction.

## DISCUSSION

*Sufficiency of the Evidence*

In his first two issues, appellant contends that the evidence is insufficient to support his convictions for forgery and engaging in organized criminal activity. When reviewing the

---

[1] Because we must discuss the facts of this case in detail below in order to address the issues raised by appellant, we limit our recitation of the facts here.

sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences that can be drawn from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In our analysis, we assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jury alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence. *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). We consider only whether the jury reached a rational decision. *See Isassi*, 330 S.W.3d at 638 ("Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally." (quoting *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009))).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge is one that 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id*. (quoting *Malik*, 953 S.W.2d at 240). The law as authorized by the indictment means the statutory

elements of the charged offense as modified by the factual details and legal theories contained in the indictment. *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013).

The statute under which appellant was convicted for forgery states the following, in relevant part:

(a)    For purposes of this section:

(1)    "Forge" means:

(A)    to alter, make, complete, execute, or authenticate any writing so that it purports:

(i)     to be the act of another who did not authorize that act;

(ii)    to have been executed at a time or place or in a numbered sequence other than was in fact the case; or

(iii)   to be a copy of an original when no such original existed;

(B)    to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A).

. . . .

(b)    A person commits an offense if he forges a writing with intent to defraud or harm another.

Tex. Penal Code § 32.21.

The statute under which appellant was convicted for engaging in organized criminal activity states the following, in relevant part:

(a)    A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member

4

of a criminal street gang, the person commits or conspires to commit one or more of the following:

(1)     murder, capital murder, arson, aggravated robbery, robbery, burglary, theft, aggravated kidnapping, kidnapping, aggravated assault, aggravated sexual assault, sexual assault, continuous sexual abuse of young child or children, solicitation of a minor, forgery, deadly conduct, assault punishable as a Class A misdemeanor, burglary of a motor vehicle, or unauthorized use of a motor vehicle.

*Id.* § 71.02. A "combination" is defined as "three or more persons who collaborate in carrying on criminal activities." *Id.* § 71.01(a).

With respect to the forgery charge, the indictment alleged that appellant, "on or about the 28th day of September, 2009, did then and there, with intent to defraud or harm another, pass to [a bank teller] a writing that had been forged and said writing was a check." With respect to the charge for engaging in organized criminal activity, the indictment alleged that appellant, "on or about the 28 day of September, 2009, with intent to establish, maintain and participate in a combination or in the profits of a combination, said combination consisting of himself, [Hargrove] and [McMain], did then and there commit forgery."

Appellant contends that the evidence is insufficient to support his conviction for forgery because, he argues, there is insufficient evidence that he passed the forged check to the bank teller on September 28, 2009, and that he knew at the time the check was passed that it was forged. He contends that the evidence is insufficient to support his conviction for engaging in organized criminal activity because, he argues, there is insufficient evidence that he collaborated with Hargrove and McMain to commit more than a single crime (namely the one on October 8 to which he pleaded

5

guilty). Because the same evidence supports both convictions, we will set forth the evidence below and then address appellant's arguments with respect to each conviction.

### A.     The Evidence

A review of the evidence in the light most favorable to the verdict begins with the testimony of the bank teller who received the forged check on September 28. The teller testified that the police showed him a photo lineup after appellant tried to pass a forged check on October 8, and he identified appellant as the driver of the car during the September 28 incident where a forged check was passed to him. The teller circled appellant's photo on a photo lineup, and the lineup was admitted into evidence. The bank teller further testified that he would have recognized Hargrove if Hargrove had been the driver because he went to school with him. He testified that he would have known there was a problem if Hargrove had tried to cash a check using the name "Patrick Manning," as he knew Hargrove's real name.

In addition to the bank teller's testimony, McMain, who had also worked as a teller at the same bank, testified that both appellant and Hargrove "pressured" her and "badgered" her to give them numbers of accounts at the bank. She testified that she "finally gave in" to their requests and gave them the account number for a business called "HPS Concrete" because the account "held a lot of money." The check that was passed to the bank teller on September 28 purported to be made by "HPS Concrete Inc." and was made payable to "Patrick Manning."

Appellant also made admissions during a videotaped interrogation after he was arrested on October 8 and in a written statement he made a few days after his arrest. In the videotaped statement made shortly after his arrest, appellant stated that Hargrove asked him to drive

6

him to the bank and cash a check on that day. He stated that he and Hargrove did not discuss a specific amount of money he would be paid but that Hargrove told him that he would "hook [him] up" if he drove him there and cashed the check. He further stated that Hargrove "climbed in the back seat." When asked by the officer why Hargrove climbed into the back seat, appellant stated "I don't know, I think because he knows everybody here at this bank." He also stated, "I'll tell you how you can find out everything because I think that's his computer in the back seat, and that's what he prints all . . . or I guess what all he prints on." In addition, appellant admitted that he knew Patrick Manning because he had "seen him up at the bar playing cards" and had talked to him. He further stated that he had been at the bar on the night when Manning "claimed that he got robbed" but that he had not robbed Manning. Regarding the car he was driving, he stated that his girlfriend's BMW was "in the shop" and that she had borrowed the car from someone, and he was using it that day. He denied that he had ever been to the bank before, specifically denied that he had been there on September 28, and stated that Hargrove had never asked him to cash a check before.

In the written statement appellant made a few days after his arrest, he changed his story and admitted that he had in fact been to the bank with Hargrove a couple of weeks before the October 8 incident. His written statement included the following:

> About six months ago I met a guy named Steve Hargrove . . . About a month or so ago I first met [McMain]. [McMain] was [Hargrove's] new girlfriend. At the time [McMain] worked at the Blanco Bank in Bulverde. She was the teller . . . [Hargrove] told me that he was in some kind of trouble in Kingsland for forging some checks there.
>
> . . . .
>
> About two weeks ago I was at [Hargrove's brother's] trailer. [Hargrove] and [McMain] were there. The night before, [Hargrove] said that he wanted me to come

7

over in the morning. I had driven over there in my girlfriend Tammy's car. It is a blue, BMW X3-SUV. [Hargrove] wanted to drive the BMW. I went with him. He drove to the Blanco Bank in Bulverde. He went through the drive through lane. It was about 8:00 AM. [Hargrove] cashed a check at the drive through. He never let me see the check. He got about eight thousand dollars in cash. We did not have much conversation about it but after the fact, I knew it was a forged or counterfeit check. [Hargrove] asked me what I wanted out of it and I said that all I needed was to get my tools out of a pawn shop. We drove to the Cash America Pawn Shop on US 290 in west Austin and I redeemed my tools for about $300. I told him that I needed to get more tools out of another pawn shop. He gave me $1200 and I used about $400 to redeem my tools at a pawn shop at US 281 and Bitters in San Antonio. I spent the rest of the money on other things.

. . . .

Later on [Hargrove] told me that he had bought some software that allowed him to make counterfeit checks on the computer. Last week I was at [Hargrove's brother's] trailer again. [McMain] was there too. [Hargrove] had a paper that had a bunch of account names and numbers from the bank that [McMain] worked at. He was figuring out which one to use to make another check.

The night before we got arrested [Hargrove] was counterfeiting a check in Tammy's garage. Tammy did not know anything about this. [McMain] came out and asked [Hargrove] about the "paper" with the account numbers on it. [Hargrove] printed up some kind of check, but I did not see it. We were using the garage because Tammy was up and she did not know anything about it. The next day we got arrested at the Blanco Bank while attempting to pass that check. On that occasion I was driving [someone else's] car . . . Tammy's BMW was in the shop and she was using his car, so I borrowed it. We had not talked about exactly what my cut was to be but [Hargrove] said that he would take care of it.

The bank teller identified the car used on September 28 as a BMW matching appellant's description of his girlfriend's car. The photos that the bank teller identified were admitted into evidence. Appellant's former girlfriend, Tammy, also testified that she had a silver-blue BMW X3 that she sometimes let appellant use when they were dating.

The detective who responded to the bank's call about a forged check on October 8 testified that he collected the check and driver's license provided to the bank teller by appellant. The

8

check and driver's license were admitted into evidence at trial. The check was made payable to "Patrick Manning," and the driver's license was that of Patrick Manning. Appellant's former girlfriend, Tammy, testified that she was at a bar with appellant in mid-September 2009 when Patrick Manning was robbed. She testified that Manning's wallet and money were stolen.

The detective further testified that when he first arrived at the scene on October 8, he saw only one person in the car. He testified that the person he saw, who was later identified as appellant, was in the driver's seat. When he ordered appellant out of the car and began to handcuff him, he heard a noise from the car, and a man who was later identified as Hargrove ran from the back seat. A videotape from the bank admitted into evidence confirmed the detective's testimony. The detective further testified that a citizen with a concealed-handgun license stopped Hargrove at gunpoint, allowing the detective to take Hargrove into custody.

Turning to appellant's argument regarding his forgery conviction—that there is insufficient evidence to prove that he passed the forged check to the bank teller on September 28, 2009, and that he knew at the time the check was passed that it was forged—we conclude that the evidence set forth above is sufficient to support the conviction. The evidence shows that a man named Patrick Manning, who appellant knew, was robbed at a bar while appellant and his girlfriend were at the bar; that Manning's wallet was stolen; that both appellant and Hargrove "badgered" McMain to provide them with account numbers from the bank; that appellant and Hargrove went to the Blanco Bank on September 28 in a BMW matching the description of appellant's girlfriend's car, which appellant sometimes drove; that the forged checks were made payable to "Patrick Manning" and that Patrick Manning's driver's license was used on October 8; that the bank required identification from anyone asking to cash a check; that the bank teller who

9

received the forged check on September 28 identified appellant as the driver who passed him the check; that the teller went to school with Hargrove and would have recognized him and known that he was not Patrick Manning; that Hargrove was in the back seat of the car on October 8; that appellant stated that Hargrove was in the back seat because Hargrove "[knew] everybody . . . at [the] bank"; and that appellant stated that he received $1,500 from the cashing of the first forged check.

From this evidence, the jury could have inferred that appellant knew from the beginning, when he and Hargrove asked McMain for account numbers, that he was participating in a scheme to commit forgery and that he had to pass the check on both dates because Hargrove could not be seen cashing a check under a different name at a bank where he knew the people working there. Although appellant never admitted to having knowledge of the forgery when the first check was passed on September 28, he also did not admit to having been there at all on September 28 in his initial statement and then later changed his story. The jury is the sole judge of credibility and the weight to be attached to evidence, and juries may draw multiple reasonable inferences from facts that are supported by evidence. *See Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 15; *King*, 29 S.W.3d at 562. Further, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper*, 214 S.W.3d at 13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Regarding appellant's argument with respect to his conviction for engaging in organized criminal activity—that there is insufficient evidence that he collaborated with Hargrove and McMain to commit more than the single crime on October 8, 2009—we also conclude that the evidence set forth above is sufficient to support the conviction. Appellant pleaded guilty to

committing forgery on October 8, 2009, and we have already concluded above that the evidence is sufficient to support the jury's conclusion that appellant also committed forgery on September 28, 2009. The evidence that appellant committed forgery on both dates, that McMain provided the account numbers necessary to forge the checks, that she did so at the request of both appellant and Hargrove, and that appellant admitted that Hargrove had "a bunch of account names and numbers from the bank that [McMain] worked at," supports a conclusion that appellant committed forgery with the intent to participate in a "combination" or in the profits of a "combination," with the "combination" being him, Hargrove, and McMain, who "collaborat[ed] in carrying on criminal activities."[2] *See* Tex. Penal Code §§ 71.01(a), 71.02; *Blea*, 483 S.W.3d at 33; *Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13, 15; *Clayton*, 235 S.W.3d at 778.

Because we conclude that the evidence is sufficient to support appellant's convictions for forgery and engaging in organized criminal activity, we overrule his first two issues.

### Admission of Evidence

In his third issue, appellant contends that the trial court erred in admitting a portion of appellant's videotaped interrogation in which appellant referenced his previous convictions for

---

[2] Appellant also seems to argue that there was insufficient evidence that all three people were involved in both offenses because McMain testified that she gave appellant and Hargrove only one account number and then told them to "get off [her] back and leave [her] out of it." However, appellant admitted in the written statement he provided a few days after his October 8 arrest that he had been at Hargrove's brother's house the previous week, that "[McMain] was there too," that "[Hargrove] had a paper that had a bunch of account names and numbers from the bank that [McMain] worked at," and that Hargrove "was figuring out which one to use to make another check." He then stated that Hargrove "was counterfeiting a check in Tammy's garage" on the night of October 7 and that "[McMain] came out and asked [Hargrove] about the 'paper' with the account numbers on it." Thus, when viewed in the light most favorable to the verdict, the evidence is sufficient to prove that McMain provided multiple account numbers and had a sustained involvement in the forgeries.

11

robbery and possession of a controlled substance. Appellant points out that he had previously obtained an order from the trial court granting his request in his motion in limine that the State approach the bench and obtain a ruling before referring to any extraneous offenses allegedly committed by appellant. He argues that the State failed to comply with the order before offering the interrogation. The specific portion of the interrogation in which appellant spoke about extraneous offenses occurred as follows:

Detective: Have you ever been arrested before?

Appellant: Yes, sir.

Detective: What for?

Appellant: Possession of a controlled substance and robbery.

Detective: What was the robbery?

Appellant: It was a convenience store, but it wasn't a robbery. The guy wouldn't turn the pump on for my gas, and I walked back in and got my ten dollars back and walked back out, and that's a robbery.

Detective: What did you do?

Appellant: No, I swear to God I didn't touch him, but I went to prison for it.

We review the trial court's admission of evidence for an abuse of discretion, and we do not reverse the trial court's ruling unless the ruling falls outside the zone of reasonable disagreement. *See Blasdell v. State*, 470 S.W.3d 59, 62 (Tex. Crim. App. 2015); *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010).

The State argues that appellant failed to preserve error with regard to this issue. The State asserts that the trial court's ruling on appellant's motion in limine was not sufficient to preserve

error and that appellant was required to object to the admission of his interrogation at the time that it was offered. We agree. Appellant did not object at the time that the State offered his videotaped interrogation, instead stating, "No objection," and it is well-settled that a trial court's grant of a defendant's motion in limine does not alone preserve error and that the defendant must also object at the time the challenged subject is raised at trial. *See Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007); *Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985); *Norman v. State*, 523 S.W.2d 669, 671 (Tex. Crim. App. 1975); *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd). Accordingly, we conclude that appellant failed to preserve error on this issue.

Even if he had preserved error, the record shows that any error in the admission of the extraneous-offense evidence was harmless. The erroneous admission of extraneous offense evidence is non-constitutional error. *See Hernandez v. State*, 176 S.W.3d 821, 824–25 (Tex. Crim. App. 2005); *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003); *Jessop v. State*, 368 S.W.3d 653, 678 (Tex. App.—Austin 2012, no pet.). Accordingly, any error must be disregarded unless it affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble*, 330 S.W.3d at 280. If the improperly admitted evidence did not influence the jury or had but a slight effect on its deliberations, the error is harmless. *Id.*; *Bagheri*, 119 S.W.3d at 763.

When conducting a Rule 44.2(b) harm analysis based upon the erroneous admission of evidence, an appellate court should consider everything in the record, including:

[A]ny testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.

*Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005).

Here, the parties and the trial court discussed including an instruction in the jury charge to address the extraneous offenses mentioned in appellant's interrogation. The State indicated that the State and appellant had agreed to an instruction. The following exchanges then occurred:

| | |
|---|---|
| Court: | Yeah. [Defense counsel] has requested just a limiting instruction that we will add, by agreement with the State, in the general instructions, paragraph F, that we just say: Further, regarding the testimony concerning the defendant's involvement in any act or acts not charged in the indictment, if any, referred to in State's Exhibit Number 9 [appellant's videotaped interrogation] shall not be considered for any purpose. |
| | . . . . |
| Defense counsel: | In regard to having the video show the robbery and the possession that he said that he committed, I would request the Court to instruct the jury to disregard that part of the video. |
| | . . . . |
| Court: | I think this language will be sufficient because that's its intent. The only way that I could make it maybe more specific is instead of saying involvement in any act or acts, the defendant's convictions. That would help to specify, if you want me to, as opposed to the word involvement. |
| | . . . . |
| Defense counsel: | Yeah. That's fine . . . And I'll still make the request for the motion to disregard based upon the agreed motion in limine |

14

> . . . I can do it now depending on what you want to do. And if you decide not to, then I'll move for a mistrial just to protect the record.

As he said he would, defense counsel then made a request for an instruction to disregard the evidence, which was denied by the trial court, and then moved for a mistrial, which was also denied by the trial court. The final instruction included in the jury charge stated, "[R]egarding the testimony concerning the Defendant's conviction for any act or acts not charged in this indictment, referred to in State's Exhibit 9 [appellant's videotaped interrogation], shall not be considered by you for any purpose." Instructions to the jury are generally considered sufficient to cure improprieties that may have occurred during trial. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). In addition, we generally presume that a jury follows the judge's instructions. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).[3]

Further, the challenged excerpt from appellant's interrogation includes appellant's explanation of his robbery conviction, in which he downplayed the offense, stating that it was simply a misunderstanding regarding ten dollars he retrieved from a gas station after a gas-station attendant would not activate the gas pump. In addition, there is considerable evidence in the record supporting appellant's guilt of forgery and engaging in organized criminal activity, as set forth above. We also note that aside from publishing the videotaped interrogation, the State did not mention or draw attention to the extraneous-offense evidence at any time during the trial. Considering the entire

---

[3] To the extent that appellant argues that the trial court erred in denying his request for an instruction to disregard, we are unpersuaded by the argument, as the trial court's instruction to the jury that the jury could not consider statements regarding appellant's convictions in his videotaped interrogation *for any purpose* is essentially an instruction to disregard the statements.

15

record, we conclude that even assuming that appellant preserved error on this issue, which he did not, and even assuming without deciding that the trial court erred in admitting the challenged portion of the interrogation, any error was harmless. *See* Tex. R. App. P. 44.2(b); *Rich*, 160 S.W.3d at 577–78; *King*, 953 S.W.2d at 271; *see also Gamboa*, 296 S.W.3d at 580; *Colburn*, 966 S.W.2d at 520. Accordingly, we overrule appellant's third issue.

## CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgments of conviction.

 

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed: October 19, 2016

Do Not Publish